[Civ. No. 6035. Fourth Dist. Feb. 26, 1960.]

JULIUS ALUISI et al., Appellants, v. COUNTY OF FRESNO et al., Respondents.

*Assigned by Chairman of Judicial Council.

J. W. Ehrlich, Jack Miller and Duncan Davidson for Appellants.

Robert M. Wash, County Counsel, and Floyd R. B. Viau, Assistant County Counsel, for Respondents.

COUGHLIN, J.—Petitioners are discharged deputy sheriffs of the county of Fresno who seek reinstatement. They were discharged by the sheriff of that county, one of the respondents herein, pursuant to a written order of removal dated September 26, 1956, charging them with inexcusable neglect of duty. At that time they were permanent civil service employees. On November 7, 1956, the sheriff filed an amended order for removal with the civil service commission of that county charging petitioners with inexcusable neglect of duty, immorality, insubordination and dishonesty. Thereafter, in conformity to civil service regulations, petitioners appealed from the amended order of removal; a hearing thereon was held before that commission; the charges of inexcusable neglect of duty, insubordination and dishonesty were found to be true and the charge of immorality was found to be untrue; and the amended order of removal was affirmed. Subsequently, mandamus proceedings were instituted before the Superior Court of Fresno County to review this decision of the commission. Because the transcript of the proceedings before the commission was incomplete, due to a faulty mechanical recording and

transcription process, the superior court entered judgment setting aside the commission's decision and directing a rehearing. This judgment was affirmed by this court on appeal. (*Aluisi* v. *County of Fresno,* 159 Cal.App.2d 823 [324 P.2d 920].)

Upon a rehearing the commission found the charges of inexcusable neglect of duty, insubordination and dishonesty to be true; made no finding on the charge of immorality, considering that charge to be disposed of by its former decision; and ordered that the amended order of removal be affirmed. The respondents Eymann, Wiebe and Kaiser were the only members of the commission participating in the second hearing.

Petitioners instituted the instant proceeding in mandamus, asking for reinstatement upon the ground that the decision of the commission "was not supported by substantial evidence in the light of the whole record"; that they "were not given a fair and impartial trial . . . in that the members of the Commission . . . were biased and prejudiced against . . . them"; that the "commission refused to give any weight or consideration to the rating of the petitioners"; that the director of personnel participated in the deliberations of the commission; and that the commission refused to admit material evidence.

At the hearing before the trial court a transcript of the proceeding before the commission was introduced in evidence, together with testimony of witnesses respecting alleged statements by the respondents Eymann and Kaiser which petitioners claimed established bias and prejudice. The court found the allegations in the petition setting forth the grounds for reinstatement to be untrue, and entered judgment that the alternative writ of mandamus theretofore issued be discharged and that the peremptory writ of mandate be denied. From this judgment petitioners take this appeal.

Under section 1094.5 of the Code of Civil Procedure, in proceedings to judicially review the decision of a civil service commission the inquiry extends to questions involving jurisdiction, whether there was a fair trial, and whether there was any judicial abuse of discretion. An abuse of discretion is established if the commission "has not proceeded in the manner required by law, the . . . decision is not supported by the findings, or . . . the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (b)(c).)

There is substantial evidence in the record to support the following statement of facts: In the late evening of September 10, 1956, petitioners, as deputy sheriffs, while assigned to an

automobile patrol of a designated beat in the unincorporated area on the outskirts of the city of Fresno, radioed headquarters for permission to patronize a drive-in eating establishment outside their assigned beat. Permission was granted; they proceeded to this establishment; had something to eat; and at 11:01 p.m. radioed to headquarters that they were back in service. However, they did not immediately return to their beat, but remained at the drive-in and engaged three teen-age girls in a conversation culminating in the petitioners driving away in their automobile, and by prearrangement, being followed by the girls in another automobile. At the intersection of Church and Maple Avenues, which was about 3 miles off of their assigned beat, the sheriff's automobile drove into a walnut grove owned by the father of petitioner Aluisi. The automobile in which the girls were riding followed into the grove. The automobiles were stopped within a few feet of each other. Petitioner Boyd got out of the sheriff's car and approached the girls, one of whom got into the sheriff's car with petitioner Aluisi. As to what occurred at this time there is sharp disagreement; the girls testified to conduct on the part of petitioners of an immoral nature; petitioners testified they were in the grove only a few minutes asking the girls routine questions in the course of a proper investigation of suspected vice. Customarily petitioners returned to headquarters at 11:40 p.m. to file their reports, preliminary to checking out at midnight. Not having heard from them, at 12:01 a.m. they were called by the radio operator at headquarters who requested their estimated time of arrival. Petitioner Aluisi responded to the call and replied, "in about 15 minutes." Petitioners returned to headquarters forthwith; made out their daily activity reports; but made no mention of any incident concerning an alleged vice investigation. On September 19, 1956, one of the girls was picked up as a runaway, and in the course of a resulting investigation she, and the other girls, told of the aforesaid incident. Petitioners were interrogated on several occasions and denied they had been with the girls on the evening in question; these denials were made to a detective sergeant of the juvenile department, later to their superior officer, a lieutenant in the sheriff's office, and on another occasion to their captain and the same lieutenant. After this, petitioner Boyd queried the lieutenant respecting the acceptability of a false alibi. On September 22, 1956, petitioner Boyd contacted the lieutenant and stated that he had decided to tell the truth. He signed a written statement

in which he admitted being with the girls in the walnut grove pursuant to their prearrangement, but denied any acts of immorality. Petitioner Aluisi, in the presence of the lieutenant, became angry when it appeared that Boyd was going to confess and called the latter a profane name. Prior to this time petitioner Aluisi claimed that he had no previous acquaintance with the girls, but another deputy sheriff testified that during the first week in September, 1956, Aluisi asked him if he wanted a date; that he knew some girls who were "all set to go"; and that he gave a description of one of the girls. The description in question fitted the description of the girl who got into the automobile with Aluisi at the walnut grove. At no time did either petitioner report to the sheriff, as required by regulations, that they were investigating any suspected vice. A criminal complaint filed against petitioners, charging them with contributing to the delinquency of minors, was dismissed after preliminary hearing, for want of probable cause. As heretofore noted, the commission, after the first hearing, found the charges of immorality untrue.

The authority of the trial court, in judging the sufficiency of the evidence to sustain the decision of the commission, was confined to a determination as to whether, in the light of the whole record, there was substantial evidence before the commission to support its finding. (*Damiani* v. *Albert*, 48 Cal. 2d 15, 17 [306 P.2d 780].)     Applying this rule to the foregoing statement of facts, we conclude that the findings of the commission and of the trial court, that the charges against petitioners of inexcusable neglect of duty, insubordination and dishonesty were true, are adequately supported.

Petitioners claim that the record as a whole establishes that the sheriff would not have discharged them except for the alleged acts of immorality which were found not to be true, and for that reason the findings are not supported by the evidence under the rule as stated. This contention, instead of being based on the record as a whole, was based on a selected answer to a question asked the sheriff. We have examined the record and determined that the testimony in question, when considered in connection with the whole record, does not sustain their contention.

Preceding the second hearing, petitioners filed a verified written statement with the commission objecting to the participation of the members thereof in that hearing, upon the ground that they were biased and prejudiced. Only three of the five commissioners actually participated in the hearing.

As to these, the basis for the objection was that each of them had participated in the first hearing and by reason thereof had prejudiced the outcome of the case; that they did not believe the testimony of petitioners at the first hearing; that they were of the opinion that petitioners had not told the truth at that hearing. In addition, as to Commissioner Eymann, it was stated that he had told Boyd that Aluisi was no good, and it would serve no purpose to have a new hearing as to his case. The members of the commission did not file any affidavits in reply to the verified statement. They considered the objections made; overruled them; and proceeded with the hearing before the three commissioners heretofore named. It should be noted, however, that the verified statement also set forth grounds of objection to the other two commissioners, alleging that one was a deputy sheriff and the other a member of the sheriff's posse. As these two men did not participate in the second hearing, no cause of complaint can be based on these facts. At the trial in the instant proceeding it was also contended that Commissioner Kaiser was prejudiced and biased against petitioners because, when asked a question by petitioners' attorney during the commission hearing, Kaiser said, "I am afraid of being misquoted." It is contended that this remark was derogatory; was directed toward the attorney; and is grounds for disqualification under the rule in *Woolley* v. *Superior Court,* 19 Cal.App.2d 611, 626 [66 P.2d 680]. However, the evidence before the trial court established that a newspaper reporter was also present and it may be concluded that Kaiser had this fact in mind when making the statement in question. Commissioner Eymann testified before the trial court and denied making the statements attributed to him in the verified statement filed with the commission. The court found the allegations respecting bias and prejudice to be untrue. ■ Where the sufficiency of the evidence to sustain a finding is questioned on appeal, and the record presents a conflict of testimony and inferences upon that issue, the court must accept that testimony and those inferences which will support the finding. (*Thomas* v. *Hunt Mfg. Corp.,* 42 Cal.2d 734, 736 [269 P.2d 12].) These observations would dispose of the contentions respecting bias and prejudice except for the fact that Commissioner Eymann also testified that he did not believe some of the testimony of petitioners on material matters which they gave at the first hearing; that, with respect to such testimony, he believed they swore falsely. This testimony by Eymann is uncontradicted.

As a general rule, in judicial proceedings when "a judge has stated that a party has given false testimony, even though his belief is founded on the evidence before him, he is disqualified from retrying the case." (*Keating* v. *Superior Court*, 45 Cal.2d 440, 444 [289 P.2d 209].)

The foregoing state of the record requires a determination whether the participation of the commissioners in the first hearing, or the state of mind of Commissioner Eymann respecting the prior false testimony of petitioners resulted in depriving them of a "fair trial." The term "fair trial" as used in section 1094.5 of the Code of Civil Procedure, as applied to these proceedings, means a fair trial under the circumstances of this case.

The results of the second hearing were the same as the results of the first hearing with this exception: there is a complete record of the second hearing, whereas, there was not such as to the first hearing. The only reason the second hearing took place was because the trial court, in a mandamus proceeding, was prevented from inquiring into the validity of the first commission order because the record of the hearing culminating in that order was incomplete. The law does not provide that a civil service employee shall have two hearings before two different commissions, or other reviewing bodies, because of a defect in a recording process which rendered impossible a proper review of the first hearing. Under these circumstances we do not believe there is anything unfair in the second hearing before the same members of a commission who participated in the first hearing. Neither do we believe that under the circumstances of this case there was anything unfair in the second hearing because one of the commissioners believed that petitioners had testified falsely in the prior hearing. The trial court found that the commission hearing here under review was fair, and we concur in that finding.

In support of their position, petitioners cite *Calhoun* v. *Superior Court,* 51 Cal.2d 257 [331 P.2d 648]; *Keating* v. *Superior Court,* 45 Cal.2d 440 [289 P.2d 209], and *Evans* v. *Superior Court,* 107 Cal.App. 372 [290 P. 662], which apply the general rule heretofore stated to judicial proceedings. [7] While proceedings before a civil service commission are quasi judicial in nature (*Garvin* v. *Chambers,* 195 Cal. 212, 216 [232 P. 696]; *Nider* v. *Homan,* 32 Cal.App.2d 11, 15 [89 P.2d 136]), they are not within the regulatory provisions of the Code of Civil Procedure and are not to be "marked by the refinement and subtleties which are characteristic of the

conduct of actions in courts of law.'' (*Dyment* v. *Board of Medical Examiners*, 57 Cal.App. 260, 265 [207 P. 409]. See also *Gipner* v. *State Civil Service Com.*, 13 Cal.App.2d 100, 106 [56 P.2d 535] ; *Anderson* v. *Board of Medical Examiners*, 117 Cal.App. 113, 115 [3 P.2d 344].)      On the other hand, the practice before a court, by analogy, has been used to judge the propriety of proceedings before such a commission. (*Nichols* v. *Sunderland*, 77 Cal.App. 627, 637 [247 P. 614] ; *Dyment* v. *Board of Medical Examiners*, 57 Cal.App. 260, 266 [207 P. 409].) The civil service ordinance in question, or the rules and regulations adopted pursuant thereto did not authorize an employee to challenge a member of the commission for bias or prejudice, nor did they provide a method by which such a challenge should be presented or acted upon. On the other hand, the law directs the court reviewing a decision of such a commission to inquire whether there was a fair trial. A fair trial contemplates an impartial trial. (*Saks & Co.* v. *City of Beverly Hills*, 107 Cal.App.2d 260, 265 [237 P.2d 32].) Nevertheless, even though it be assumed that the principle conferring the right of disqualification in judicial proceedings applies to and controls a determination whether a civil service hearing was fair, the application of that principle to the facts at bar requires an affirmance of the judgment of the trial court.

The mere fact that the members of the commission who made the decision under consideration participated in the first hearing did not disqualify them in the second hearing. (*Keating* v. *Superior Court*, 45 Cal.2d 440, 447 [289 P.2d 209].)      Moreover, as the commission was the only administrative agency authorized to pass upon petitioners' appeal, under a rule of necessity, it was their obligation to proceed with the hearing. (*Caminetti* v. *Pacific Mutual L. Ins. Co.*, 22 Cal.2d 344, 366 [139 P.2d 908] ; *Scannell* v. *Wolff*, 86 Cal.App.2d 489, 492 [195 P.2d 536].)

'' 'By the great weight of authority, a judge or an officer exercising judicial functions may act in a proceeding wherein he is disqualified by interest, relationship, or the like, if his jurisdiction is exclusive and there is no legal provision for calling in a substitute, so that his refusal to act would prevent absolutely a determination of the proceeding.' '' (*Nider* v. *Homan*, 32 Cal.App.2d 11, 17 [89 P.2d 136].) Besides, by a judgment which now is final, the respondent commission was directed to rehear petitioners' appeal. (*Aluisi* v. *County of Fresno*, 159 Cal.App.2d 823 [324 P.2d 920].)

In passing on their own qualifications, after challenge for bias or prejudice, the commission followed the practice formerly applicable in judicial proceedings to disqualify a judge upon the same grounds. (*Evans* v. *Superior Court,* 107 Cal. App. 372, 382 [290 P. 662].)

The failure of the members of the commission to deny, in writing under oath, the charges made against them was not an admission of those charges as there was no law, rule or regulation requiring them to do so. In this regard the case at bar is distinguishable from the cases cited by petitioners.

With respect to the charge against Commissioner Eymann, a distinguishing fact is that, in the cited cases the judge, previous to the hearing or trial there in question, had expressed his belief that the party to the action seeking to disqualify him had willfully testified falsely. Such is not the fact in the instant case. Commissioner Eymann testified that he believed petitioners had sworn falsely under oath but did not testify that he believed their false swearing was willful.

''In deciding questions of fact a judge may often reject the testimony of a party, but this does not necessarily indicate that he believes that the party was guilty of deliberate falsification. The rejection of the testimony may have been the result of a consideration of the ability of the party to observe or remember, and in such a situation failure to accept a party's version of the facts does not show that the judge is biased or prejudiced against him.'' (*Keating* v. *Superior Court,* 45 Cal.2d 440, 444 [289 P.2d 209].)

It is noteworthy that, in the case at bar, the commission unanimously believed the testimony of the petitioners denying their involvement in acts of immorality with the girls who were the subject of their investigation. This is an additional factor which the trial court was entitled to consider in reaching a decision as to whether the petitioners had a fair trial. It must be assumed that the trial judge inferred that the members of the commission did not reject the whole of the testimony of petitioners because a part thereof may have been false; that said members did accept part of that testimony and based a finding in favor of petitioners thereon; and that the mental attitude of respondent commissioners was not prejudiced or biased but impartial.

Petitioners' remaining contentions involve questions concerning the admission and rejection of testimony and are wholly without merit. Refinements respecting ad-

missibility of evidence incident to a trial before a court are not essential to a fair hearing before a civil service commission. (*Gipner* v. *State Civil Service Com.*, 13 Cal.App.2d 100, 106 [56 P.2d 535].) ▮ A transcript of the testimony of one of the teen-age girls, taken at the first hearing, was admitted into evidence because of her inability to be present at the second hearing. The petitioners objected to this testimony on the ground that the record of the first hearing was incomplete. The fact that the record of that hearing as a whole was incomplete, is not proof that a transcript of the testimony of any single witness contained in that record was incomplete. The petitioners' objection was properly overruled.

▮ The commission's refusal to permit the sheriff to be cross-examined with respect to the disciplinary action he had taken in other cases, involving other offenses and other officers, did not constitute an abuse of discretion. The contention that the commission did not consider petitioners' efficiency report in arriving at a decision has no basis in fact. The reports were in evidence, the weight to be given such reports was a matter for the trier of facts to determine.

The remaining grounds set forth in the petition, viz., that the commission acted arbitrarily, capriciously and fraudulently, and that the director of personnel participated in the deliberations of the commission are not supported by the record and have not been argued on appeal.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 20, 1960.